The United States Court of Appeals for the Federal Circuit is now open and in session. The first argued case this morning is number 16-2301 St. Bernard Parish Government v. United States. Mr. Fletcher. Thank you, Your Honor. Good morning, and may it please the Court. Hurricane Katrina was an extraordinary natural disaster that produced the largest storm surge in our nation's history. The resulting flooding was a terrible tragedy, but it was not a Fifth Amendment taking for which the public owes just compensation. We think that's true for a number of reasons that we've laid out in our briefs. If I could this morning, I'd like to focus on two fundamental legal points, each of which independently requires reversal of the unprecedented judgment finding takings liability here. The first point is that the plaintiffs have now made clear that they are not claiming that the government did something that subjected their properties to flooding that would not have occurred under natural conditions. Instead, as the plaintiffs have made clear in their brief before this Court, their claim is that if the government had not constructed the Mr. Go shipping channel in the 1950s and the 1960s, the levees that the government later constructed along Reach 2 of the Mr. Go channel would have been sufficient to withstand Hurricane Katrina and prevent the flooding of their properties that actually occurred. Even if the Court of Federal Claims had made such a finding, and even if such a finding could be supported by the record, that would not give rise to a viable takings claim because there's no Fifth Amendment property right to a particular level of flood protection from federal levees. The second point that I want to emphasize this morning is that the plaintiffs suggest that under Spanenbarger, I guess they have two arguments. One is that they say that the burden of proof is on the government to show what the causal relationship was of the levees, and that the levees and the Mr. Go were different projects, so somehow you can ignore the levees as a result of that. Could you address those two arguments? Sure, and I'd like to start with the second one if I could, the separate project point, because I don't think the separate project argument applies here. I think the issue here is a little bit different than the issue in Spanenbarger, and I also think it would meet the separate project requirement or the same project requirement, even if it did apply here. So the reason why I don't think the separate project requirement or that idea applies here is that in Spanenbarger and in other cases, you're asking whether you're taking for granted that the government has taken property or caused some flooding of property. In Spanenbarger, the theory was there was a flood control project that most of the time prevented flooding of the property, but sometimes caused flooding of the property that wouldn't have happened otherwise. And the question was, on balance, has this left the property sufficiently better off that we're not going to call it a taking, even though it concededly sometimes causes flooding that wouldn't otherwise happen? And this is in some ways an antecedent question. Here the question is, was any action by the government the but-for cause of the invasion of the flooding at all? In those circumstances, we don't think it makes sense to require that it be the same property. Here, if the government had done nothing, hadn't built the levees, and hadn't constructed Mr. Goh, it's undisputed. And so this goes to the burden issue that you referred to earlier. It's undisputed that plaintiff's properties would have flooded to exactly the same extent, and that's from the plaintiff's own expert, Dr. Kemp. This is at appendix page 11394. He testifies that if neither the Mr. Goh nor the LPV had been in place, the St. Bernard Boulder would have flooded to essentially the same level as actually occurred during Hurricane Katrina. So when you have those circumstances, we don't think that the Spannenberger requirement applies. But even if you didn't agree with that, and even if you were going to allow us to count the levees only if they were part of the same project, in some sense as Mr. Goh, I do think they qualify or they would meet any such requirement. And the reason is because the levees are where they are only because of Mr. Goh. When the government dredged Mr. Goh, it's a long shipping channel, and Reach 2, the part of the shipping channel that we're talking about now, was dredged through the marsh. And when the dredging was done, the Army Corps piled the material that had been dredged alongside the bank and created land where previously there had only been marsh. The land was about six feet above the marsh as a result of the dredging. And that's the land on which the levees at issue here were later built. It was only possible to build them there because Mr. Goh had been dredged there to create the land to build the levees. And then, of course, the levees themselves were also built out of material that had been dredged from the Mr. Goh. So I think it's very hard to say that those levees ought to be separated out and treated as something separate and apart from the Mr. Goh project. And if you agree with that, and if you agree with us that either because the Spangenberger-type same project requirement doesn't apply, or that these two very closely related projects built in the same area one right after another and so closely integrated physically count for the same purposes, I think that leads to the conclusion that there was no taking here. Because it leads to the conclusion that the government's actions overall left plaintiffs no worse off than they would have been if the government had done nothing. And I think it would be particularly odd to find a taking under the circumstances like you have here, where the claim is that the government did something first, built the channel in the 1950s and 1960s, that caused levees that the government later built, years later in the 60s and 70s, to provide less protection than they otherwise would have. I think the only way that you could get to the conclusion that that sort of situation gives rise to a taking is by finding that there's some sort of property right in a greater level of protection from federal levees. But there's not. I think even plaintiffs recognize that there's no Fifth Amendment property right in a certain level of federal flood protection. And in Spangenberger itself, in another point, the court said that the Fifth Amendment does not require the government to be the insurer against all evils from flooding. So I think that's the first reason that I wanted to get to as to why taking liability is inappropriate here, even on plaintiffs' view of the facts. The second point that I also want to emphasize this morning comes from this court's decision in Ridgeline, which crystallized a long line of precedent saying that an injury to property caused by the government can give rise to takings liability instead of just a potential tort claim, only if, among other things, the government either intended the invasion of the property or the invasion that resulted was the direct, natural, or probable result of an authorized government action. And here, again, even accepting plaintiffs' view of the facts that the Mistreko ultimately, through a series of processes unfolding over decades, increased the risk of storm surge in the New Orleans area, the direct cause of the flooding of their properties was an extraordinary hurricane of unprecedented dimensions. It was not the government's construction of a shipping channel some 40 years earlier. And I think the plaintiff's response to that argument, to the Ridgeline Prong 1 argument, is to invite the court to dilute that direct, natural, or probable standard to be something much less than what it is. And I think you also see this in the Court of Federal Claims' opinion. The Court of Federal Claims found that requirement articulated the right requirement, but then found it satisfied essentially because the but-for cause of the flooding, according to the Court of Federal Claims and the plaintiffs, was the Mistreko in some sense, and also because it was foreseeable to the government at some point as late as 2004, even, the Court of Federal Claims said, that the Mistreko could give rise to increased risks of flooding during times of hurricanes and other severe storms. And what I want to emphasize is that it's possible to describe that as foreseeability, but to describe that as foreseeability is to use foreseeability in a classic negligence sense. It is to describe the government creating an increased risk. And that is the sort of thing that may give rise to a tort claim on a negligence theory, but it's never been understood to give rise to potential takings liability. And that's something that this court emphasized in Ridgeline itself. It's something that this court's predecessor, the Court of Claims, emphasized in Columbia Basin Orchard, which is the source of the Ridgeline direct, natural, or probable standard. And in Columbia Basin, the court emphasized that in no case has the Supreme Court ever indicated that an accidental or negligent impairment of the value of property constitutes a taking. Those sorts of accidental or negligent injuries inflicted by the government give rise to incidental or consequential damages that might give rise to a tort claim, but they aren't the sort of direct, natural, or probable result of authorized action that is treated as a sufficient substitute for actual intent to effectuate a taking, so as to satisfy Ridgeline's two-part test. And so we think it's very important that the court preserve the distinction that its decisions have always preserved between tort liability and takings liability, and not go down the path that the Court of Federal Claims took, which is to apply tort concepts of causation and foreseeability, to apply negligence-type liability, and to find a Fifth Amendment taking under circumstances like those present here, where you have both an extremely attenuated causal chain. Plaintiffs are complaining about the effects of a shipping channel built more than four decades before the flooding that occurred during Hurricane Katrina, and their argument is that that channel caused a variety of natural processes, or aggravated a variety of natural processes, including the incursion of salinity, the change of habitat, the widening of the channel, things that unfolded over decades and that in combination produced an increased risk. And then at the end of that very attenuated causal chain, which is already far more attenuated than anything that's previously been found to give rise to a taking, you have the extraordinary natural event of a hurricane of unprecedented dimensions that would even by itself be the sort of intervening cause that this Court described in the Kerry decision, something that breaks the causal chain and eliminates any takings liability, renders any injury that occurs consequential or incidental, possibly compensable as tort, but not as taking. And of course here, very similar claims were asserted in tort in the Robinson case. The Fifth Circuit ultimately held that those tort claims could not go forward because the government had not waived sovereign immunity for the tort claims that were being asserted. I think as Judge Easterbrook said in the Chicago and Milwaukee case, the limitations on the government's liability in tort have never been thought to be mere pleading requirements that can be evaded simply by switching ground to a takings theory and bringing suit under the Tucker Act. That's essentially what the plaintiffs have sought to do here. We believe that the Court of Federal Claims erred in validating that sort of theory that departs so much from traditional takings theories. If the Court has no questions, I'll reserve the balance of my time for a bubble. Just to be sure that I understand your argument, is it that in any event there's no tort liability or even if accepting that there is a would-be tort liability, that there's no way that that can be recovered under the Fifth Amendment? It's the latter. The question of tort liability was adjudicated in the Robinson case and it was held that there is no tort liability. But our position here and the critical point here is that whatever the answer might be... And there was no tort liability because of the statute that says we're not liable even though it had been decided that there was tortious action. It had been decided by the district court, yes. The Fifth Circuit didn't have occasion to reach that question because it decided that the action was immunized. It was a discretionary function for which the government was not liable. But yes, to complete the answer to the first question, our view is that whether or not there would be tort liability, this is the sort of injury that the court described in Ridgeline as one that can be compensable if at all only in tort, but certainly couldn't give rise to a taking. Okay. Thank you. Thank you. Good morning, Your Honors. And may it please the Court, Charles Cooper for the plaintiffs and cross-appellants. I want to address directly arguments made by counsel and I'm going to go first to the foreseeability point. And I believe that counsel is... Why don't you address the levies because that seems to me to be a central problem that you have. As I understand your expert testimony, which I've read in the Court of Federal Plaintiffs' ruling, that the levies are put to one side and they're assumed to be part of the environment and the only question that's addressed is whether the MoGo in that context caused flooding. And why shouldn't the levies be considered as an offsetting action here in determining both causation and foreseeability? Your Honor, the first point is that under Sponenbarger, it is pretty clear we would submit that it must be the same project that is at issue before, as in Sponenbarger, the point can be offered and the court can conclude that the project itself did not put the plaintiffs in any worse condition than they would have been if there had been no project. Do you agree that if they were the same project that you would have to take account of the levies? No, not necessarily. Well, Your Honor, we are taking account of the levies. Our submission and the evidence in the record before you has convinced two different trial court judges, federal court judges, that but for the Mr. Go, the levies would have held or at least would have held long enough to prevent devastating flooding. But there is no finding by the Court of Federal Claims in this case that if the government had never constructed MoGo and had never constructed the levies that the flooding would not have occurred. Oh, no, Your Honor. I believe there surely is. What would you show me where? Because I've looked pretty carefully. I don't see such a finding that if there had been no levies and no MoGo that they would have... Oh, I'm sorry. If there had been no levies, we're not arguing that in the absence of the levies themselves that there would have been no flooding. Certainly there would have been flooding if the government had not constructed levies. But our point is that the foreseeable cause of the levies breaching the cause itself was the government itself and the construction, expansion, and maintenance and operation of the Mr. Go. But there's no evidence that this level of damage would have been foreseeable if the government had done nothing at all. In other words, if the government had never constructed the levies, never constructed MoGo, the argument would be, well, there would be flooding as a result that would have destroyed this kind of property and that they can't recover under those circumstances by separating out MoGo from the levies. Your Honor, what this argument boils down to is exactly what they say in their briefing, that essentially the government wasn't required in the first place to build the levies, and that's certainly true. And they say that any failure of their levies to contain the floodwaters that they were intended to contain, no matter what the cause, no matter what the cause, can't impose Fifth Amendment liability on the government. And so, Your Honor, we think that's a breathtaking proposition. They're saying that... Mr. Cooper, let's get down to basics. Ticking's law requires us to look at the nature and character of the government action. If the government takes action that penalizes a few for the benefit of the many, the many should pay. Here, the government took an action 40 years before there was any injury, and it was of general benefit. How can this be a taking? Your Honor, it can be a taking simply because, as two different federal trial court judges have found, it was the foreseeable natural consequence of the series of events that the government itself initiated when it constructed, and over the course of time, maintained and operated the Mr. Go. The court, this court has... Maybe there was negligence, and, of course, that case was tried elsewhere. But here we're talking about a deliberate action, general applicability, not that penalized one group, and certainly it wasn't the direct cause. No, Your Honor, in fact, it did penalize one group. Keep in mind, there were hundreds of thousands of people whose property was destroyed or seriously damaged by Hurricane Katrina. We represent a small portion of those people, and the reason that they are different from everybody else in New Orleans, and by the way, the levies, the LPV, protects much more than just the St. Bernard polder. But the reason that they have a claim and no one else in New Orleans, at least in our judgment, has a claim, other than perhaps the tort claim that was brought on behalf of all of them, is that they can point to a cause of their flooding, of their damage, that the government itself is responsible. In many respects, this is really quite analogous to Ridgeline. In Ridgeline, the government bought a piece of property that in its undeveloped state was uphill from the plaintiff's property, and it caused storm runoff in that condition as well. But do you agree that if you're going to hold the government liable for the construction of the Mergo, that the injury to the plaintiffs here had to be foreseeable at the time of the construction? No, Your Honor, we don't. Why not? Because, Your Honor, we don't believe there's any case that holds that, and we think Arkansas Game refutes that. In Arkansas Game, the deviations from the manual releases that in their cumulative effect... I don't understand. How can it be that it doesn't have to be foreseeable when the government took the action in the first place? Your Honor, if the government took the action that by itself set in train the various elements that ultimately brought about the damage that was caused by the flooding caused by the government, then it is foreseeable. But again, in Arkansas Game, the court didn't say that the damage to the plaintiff's property, that is the trees, that ultimately were killed because the government set in motion a series of events that in their natural order, which is exactly what we have here, Your Honor... So that seems to me to eliminate foreseeability entirely. You have a finding here by the Court of Federal Claims that the damage was foreseeable in 2004, but that was decades after the Mergo was constructed. How can it be meaningful to say that if you do something that later becomes foreseeable, that an injury will flow from it, that the government has liability? It doesn't have to be foreseeable when they take the action in the first place? Your Honor, it was foreseeable long before 2004. What the court said in its opinion wasn't that it was foreseeable beginning 2004. It said that by 2004, these natural consequences, following in their natural order, had reached the point where flooding would be imminent, where it was a, quote, ticking time bomb. Why do you think it has to be foreseeable? Well, Your Honor, I think it has to be foreseeable perhaps at least in time for the government to take the action that is necessary to neutralize the flooding threat that they have created. And, Your Honor, so it would be foreseeable certainly no later than 1988 when the government itself, and the court quoted from this internal document, but when the government itself studied the Mr. Mergo and became alarmed by the rate at which the banks were eroding from its original 650 feet at that time in 1988 all the way to 1,500 feet by average. By 2004, it was 2,000 feet wide. Your Honor, the problem here is that you've got several different things which might have caused the flooding according to the plaintiffs. One is the construction of the Mergo. Another one is allowing the banks to erode. I don't know whether there's any other affirmative act that the government took, but those are two separate things. What case suggests that they would be liable for constructing the Mergo if it wasn't foreseeable that it would cause this injury at the time it was constructed? Your Honor, it was foreseeable at the time of the construction that when the government made its decision at that time not to armor the banks and knew that those banks would erode just as they did at the rate of 15 feet per year until it became in some places a 3,000 foot wide navigation channel. They knew at the time they constructed it that salinity would be introduced. Doesn't the injury have to be foreseeable and not the erosion? I mean, doesn't the ultimate injury have to be foreseeable? Isn't that the test? Is that right? Yes, Your Honor, and flooding was foreseeable. They were warned in 1957. In 1958, as the trial court outlines, in one warning after another, but in 1988, Your Honor, this is what the Corps of Engineers understood in their own internal study. It said, Continued erosion threatens to produce large breaches in the rapidly dwindling marsh buffer between the navigation channel and the open waters of the Lake Bourne. Once the Mr. Goh's Bank is breached, development to the southwest would be exposed to direct hurricane attacks from Lake Bourne. Certainly no later than 1988, and this wasn't the earliest time that the Corps of Engineers itself recognized that they had created a flood risk. Suppose the government was aware of the risk in 1988. What was the action that it took after 1988 that imposed takings liability? Your Honor, the government isn't liable for a taking only for its positive affirmative action, but the positive affirmative actions that it did take, which created the flooding danger, the flooding danger preexisted. It was from Lake Bourne and winds pushing Lake Bourne against those levees. What the government did was exacerbate that threat, add greatly to that threat, just as in Sponenbarger. The court said the government did not add to the flooding danger that preexisted its project. Here, the government added significantly, substantially to the preexisting flooding threat. After 1988? Yes, after 1988. What did it do after 1988? It continued to allow those banks to erode another 500 feet. It continued to allow the wetlands that are the horizontal levees that have slowed storm surge for centuries to be decimated by those very natural... But the problem is that your expert and your theory didn't separate out those causal elements that happened after 1988 and attribute the flooding to those causes. It was an analysis of the Murr government's entirety, including actions that were taken long before the 1988 foreseeability. No, Your Honor. These, as the Supreme Court and this court have often said, where the government's action initiated a series of events, all in their natural order, by which the landowner was deprived of beneficial use of portions of its land, a taking can be found. This was the government in the construction, in the expansion, in its maintenance, and in its operation of the Mr. Goh, actually witnessed exactly what it predicted would take place. And what it predicted would take place is that the Mr. Goh, instead of being a 650 foot wide channel with banks no wider than that, was up to 3,000 foot wide and became, Your Honor, a very clear and present danger, a ticking time bomb, in the words of the trial court, for hurricane flooding. It added enormously to the danger that the people in the St. Bernard polder, as distinct from the hundreds of thousands of people in New Orleans who can't, Judge Lurie, blame the government for the cause of their flooding damage, whether it be levee breaches or anything else. That is what makes this case a case of the extraordinary circumstances that the Supreme Court in Arkansas Game said this court has to judge in the particular circumstances of each case. Rather than... Mr. Cooper, Arkansas Game was a very limited case dealing with the temporary nature of the taking. The court said, We rule today, simply and only, that government-induced flooding gains no automatic exemption from the taking score. The court could not have limited its taking any more strongly. That's not a very powerful case in your favor. Your Honor, I'm glad you've pointed out exactly its holding, because the words of that holding foreclose the argument that my friend for the government has offered Judge Dyke to the Sponenbarger point, because his point is, look, as I quoted from his briefing, page four of his reply brief, whenever a levee breaches that we've put up, we can't be held liable if you would have been hurt just as much if we hadn't put the levee up in the first place, no matter what the cause. That's their argument, Your Honor, and that can't survive the holding that you've just read, Judge Lurie, because that is a categorical exclusion of liability. Categorical. But Arkansas didn't involve that issue. I'm sorry? Arkansas didn't involve that issue of other government action and whether that had to be considered, right? What Arkansas... No, it did not involve that issue. It did not. But what it condemned, Judge Dyke, what it condemned was exactly what this court had set up, which was a blanket exclusion for Fifth Amendment liability, and that's what is being offered to this court again. Anytime they construct a levee, they can't be liable even if they intentionally knock the levee down for the purpose of flooding everybody in the polder. That's their argument. It's breathtaking. Their argument is they can't be liable if they made things better rather than worse. And, Your Honor, I accept that, and they made things worse. Two federal district court judges have found on the record that's before you now that they made things worse. That's what the Mr. Go did, that the inevitable result of a series of events... There's no evidence that the combination of the Mr. Go and the levees made things worse. None whatsoever. Not the combination, Your Honor. That's true. And if this court expands Spohn and Barger to say that a levee combined with anything else, no matter what it is, cannot visit liability on the federal government if they sell that argument, then, yes, I will lose my case. But, Your Honor, consider the implications of that. Consider the implications. Again, no matter what the cause, they say, no matter what role the government had in the failure of the levees, if the levees have failed to contain the hurricane waters that they were intended to, they cannot be liable because they didn't have to put them up in the first place. Again, I want to say, Your Honor, we consider that to be a breathtaking proposition. What if the government, in order to shelter naval vessels, and this was an example used by Judge Duval in the tort case, Robinson, what if they had put naval vessels up to Mr. Go, knowing full well, as they knew in 1988, knowing full well that that would significantly increase the danger that the levees themselves would breach and devastating flooding would take place in the polder below? Your Honor, we would submit to you that would, if all the other factors identified in Arkansas' game are satisfied, then surely that would impose, justifiably, and in fairness, takings liability on the government. Well, suppose the government built the Mergo, and let's suppose they say, well, this might increase the risk of hurricane flood damage, so we're going to mitigate that by building levees. Do you agree that under those circumstances you'd have to consider the impact of the levees? Your Honor, I do, but I also think that that is ridgeline. That is ridgeline. And so I win in that hypothetical. That was in ridgeline. In my hypothetical, you win? Yes, I win. Because in ridgeline, the government took a pre-existing storm runoff flood risk, and they greatly increased it by putting up a postal facility with impervious surfaces and increased that runoff risk. But they failed to take adequate measures. Adequate measures. They did take some measures, a drainage swale, and Your Honor, if I may complete my answer. I see my time is up. No, please continue. If I may complete my answer. And they put up a drainage swale. They even built a check dam on the plaintiff's property. But this court found that that did not protect them from a takings liability. They had to do more by failing to create retention ponds to negate the flooding damage that the government itself had created. This court said the government had basically shifted its costs of flood control for flooding dangers that it was responsible to for onto the plaintiffs, and that created a flowage easement. That is our case, Your Honor. That is our case. The government can't just say we put up papier-mâché levees and have them fold in the face of the flooding danger that the government has itself either created or exacerbated, as in Ridgeline, and then say we can't be held liable for anything that happens after that. Thank you very much, Your Honor. If there are no further questions. Thank you, Your Honor. Just a few points in rebuttal. And I'd like to start on the levees point that, Judge Dyke, you were discussing with my friend, and to start with the Ridgeline analogy that he tried to draw, because I think it's very instructive. In Ridgeline, the government erected a postal facility above the plaintiff's property, and by building impervious surfaces and building drainage sites that discharged onto the downhill property caused floods that wouldn't have occurred if the government hadn't done anything at all. This situation is just the opposite. Everyone agrees, and my friend does not dispute, that if Hurricane Katrina had hit this area in the 1950s before either Mr. Goh or the levees were built, the properties would have flooded to at least the same extent, if not more. But isn't it critical that over the years the engineers continued to observe that there were flaws that needed repair or change, some dramatic change, that didn't occur? I don't think so, Judge Newman. I think we quibble a little bit factually with some of those assertions, but even setting aside all of those factual issues and taking what my friend described as correct, what he said is that in 1988, after these risks assertedly became apparent, the Corps failed to do things to remediate the risks, like armor the banks to prevent further erosion or close the channel. And the problem with that theory is that those sorts of discretionary inactions cannot be the basis for takings liability. And that's something that my friend himself recognized on page 37 of the Red Brief. He says, contrary to the government's suggestion, the CFC did not base its analysis on the Corps' supposed failure to take actions, such as closing the Mr. Goh or armoring its banks to prevent erosion. Those sorts of things, those sorts of inactions, can be the basis for tort suits. And they were, in fact, the focus of the tort suit in Robinson. In Robinson, Judge Duval ruled early on, before the trial happened, that the government couldn't be held liable for the original construction of the Mr. Goh. And so that tort suit focused entirely on whether the government was negligent in failing to armor the banks once it became apparent, assertively according to the plaintiffs, that erosion was causing risks of flooding. And Judge Duval held that that was sufficient to make out a negligence claim. We disagreed, and the Fifth Circuit ultimately resolved the case on immunity grounds. But the point is, that's a tort theory. Well, the Fifth Circuit didn't overturn the finding of some tort liability. Isn't that correct? That's correct, although it did vacate the judgment for lack of jurisdiction. And even more importantly, even if you were to accept Judge Duval's findings as correct, they wouldn't support a finding of takings liability here because they are findings that the government's negligent inaction, its negligent failure to take action, caused injury, not findings that the government took an authorized action that caused the invasion of plaintiff's property. Is that a dividing line between yes or no? Whether there was inaction or whether it was deliberate inaction or something else? I think it's certainly a necessary condition that inaction can't be the basis for takings liability. You have to point to some government action. And this gets to another point that I wanted to make, which was... Takings liability must be premised on a lawful action. That's correct, an authorized action, exactly, because the idea is that the government has appropriated or taken an interest in property that then belongs to the United States. And that's the reason why it has to be authorized. That's the reason why it can't be negligent. And so whatever the merits of that tort theory in Robinson, that doesn't give rise to takings liability. And I think in Arkansas game, actually this was another discussion, Judge Dyke, that you had with my friend, and the question was about at what point in time does it have to be foreseeable to the government that the invasion is going to occur? And our position, just parenthetically, is that even if you got to foreseeability, that wouldn't be enough. In Kerry, this court said that even if an injury is foreseeable, you still have to prove causation and you can still have an intervening event there, a hunter lighting a fire here, an extraordinary hurricane that breaks the chain of causation and removes takings liability even for foreseeable injuries. But setting that aside and just focusing on foreseeability for now, the lesson from Arkansas game, the remand decision, is that at the time that the government takes some authorized action, it has to be foreseeable to the government that that action is going to cause the invasion of property that ultimately occurs. And so this court was very careful, and this is on page 1373 of the remand decision in Arkansas game, to say that even though there were a series of discharges, intentional discharges from the dam that were at issue there in the regular operation of the dam every year, the court pointed out and found that before the court made the discharges that caused the loss of the timber that was at issue there. If the court had stopped in 1996, the previous discharges wouldn't have been enough to cause the loss of the timber. And before the court took the action, the discharge that ultimately caused the loss of property, this court pointed out that it was on notice that the plaintiff had actually warned and complained that the discharges, if they continued, were going to damage the timber land. So that's the sort of connection that you have to have at a minimum before you can have takings liability. And you don't have that here because, as Judge Dyke pointed out, my friends are relying on a combination of many different factors, some of which were set in motion, like the salinity issue, irrevocably once Mr. Goh was constructed back in the 1950s and 1960s, and others of which happened as a result of maybe unspecified actions they described as the maintenance or the operation of the Mr. Goh later. But they have not pointed to any point in time at which it was foreseeable that these plaintiff's properties were going to be injured. And that's in part, and this I think gets to another point that my friend raised, he pointed out that in 1957, the St. Bernard Parish government noted that the construction of the Mr. Goh could increase the risk of storm surge. And that's true. And the document that he pointed to appears at pages 111336 of the Joint Appendix. But I think the critical point to make there is that when that document was written, it was before the levees were constructed. And so if you read on the next paragraph of that document says that what the St. Bernard Parish needs are levees like the ones that the St. Bernard Parish and the City of New Orleans is building. And later, the government actually did construct those levees. And so to come back to the point that I started with, this is not like Ridgeline where the government causes flooding that wouldn't have happened if the government had done nothing. If the government had done nothing, the flooding would have been just as bad if the storm had struck. If the government built Mr. Goh and the storm had struck, the plaintiff's properties still would have flooded. And it would be very odd, I think, to say that because after building Mr. Goh, the government built levees that provided a great deal of protection that offset flood damage in a lot of cases but that weren't quite sufficient to offset the storm of Hurricane Katrina. That act of erecting levees that the government didn't have to build gives rise to a taking. So this is miles away from the circumstance where the government has built levees and then intentionally knocks them down or any of the other hypotheticals that my friend described. This is a circumstance where the taking's claim is that because the government did something in the 50s and 60s, that rendered somewhat less protective levees that the government built years later. Under those circumstances, we don't think there's any basis for finding taking's liability. And just to close, both my friend and the Court of Federal Claims have placed a lot of reliance on the Supreme Court's decision in Arkansas Fish and Game. But I think they've drawn exactly the wrong lesson from that decision. There, the Supreme Court rejected a categorical rule that temporary flooding can never give rise to a taking. But in doing that, it was careful to emphasize, as this court explained on remand, that not every incident of government-induced flooding gives rise to a taking's claim. Instead, it reminded, it said that it remains incumbent upon courts to continue to carefully apply the rules set forth in its decisions. And then it cited this court's decision in Ridgeline and Judge Easterbrook's observation in the Chicago-Milwaukee case that negligent injuries do not give rise to taking's. And what the plaintiffs are asking you to do here and what the Court of Federal Claims did is disregard those traditional limitations and impose taking's liability in a circumstance that's completely unprecedented, both in terms of the attenuation of the causal chain and the lack of foreseeability and also the intervening cause of an extraordinary natural event. We respectfully ask that the Court reverse the judgment below. Thank you. Thank you. Thank you both. The case is taken under submission.